COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-060-CV

 

 

IN THE INTEREST OF P.K.C.


A/K/A P.K.G.C., A CHILD

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant L.C. appeals an order terminating her
parent-child relationship with her child, P.K.C.[2]  In five issues, L.C. contends that the
evidence is legally and factually insufficient to support the trial court=s
judgment terminating her parental rights. 
We affirm.








                                          I.  Background

Appellee Texas Department of Family and
Protective Services (TDFPS) first became involved with P.K.C. in early 2007,
when P.K.C. tested positive for illegal substances at birth.  After further investigation, TDFPS removed
P.K.C. and placed her in foster care. 
L.C. was subsequently incarcerated in March 2007.

 P.K.C. has
remained in the same foster home since the removal.  P.K.C.=s foster
parent, Appellee C.S., intervened in this action and wants to adopt P.K.C.

In May 2007, while L.C. was incarcerated, TDFPS
provided L.C. with a service plan. 
Although L.C. attended some parenting classes, she did not complete any
services outlined in her plan.  In
January 2008, following a bench trial, the trial court signed an order
terminating L.C.=s parental rights with respect
to P.K.C.

                                 II.  Parent‑Child Termination








A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@[3]  However, A[w]hile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@[4]

In a termination case, the State seeks not just
to limit parental rights but to end them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.[5]  We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.[6]








In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish at least one ground listed under subdivision (1) of the statute
and must also prove that termination is in the best interest of the child.[7]  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.[8]

Termination of parental rights is a drastic
remedy and is of such weight and gravity that due process requires the
petitioner to justify termination by clear and convincing evidence.[9]  This intermediate standard falls between the
preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings.[10]  It is defined as the Ameasure
or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@[11]

                                    III.  Standards of Review








In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.[12]  We review all of the evidence in the light
most favorable to the finding and judgment and assume that the factfinder
resolved any disputed facts in favor of its finding, if a reasonable factfinder
could have done so, and disregard all evidence that a reasonable factfinder
could have disbelieved.[13]  We consider undisputed evidence even if it is
contrary to the finding.[14]








In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.[15]  We must determine whether, on the entire
record, a factfinder could reasonably form a firm conviction or belief both
that the parent violated at least one of the provisions in section 161.001(1)
and that the termination of the parent=s
parental rights would be in the best interest of the child.[16]  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.[17]  If we reverse on factual sufficiency grounds,
we must detail in our opinion why we have concluded that a reasonable
factfinder could not have credited disputed evidence in favor of its finding.[18]

                                 IV.  ABorn
Addicted@ Finding








Section 161.001(1)(R) of the family code provides
that a court may base an order terminating the parent-child relationship on
clear and convincing evidence that the parent has Abeen the
cause of the child being born addicted to alcohol or a controlled substance
other than a controlled substance legally obtained by prescription, as defined
by section 261.001(8) [of the family code].@[19]  The trial court=s order
of termination included a finding that tracked this language, stating L.C. was Athe
cause of [P.K.C.] being born addicted to alcohol or a controlled substance . .
. as defined by ' 261.001(8), Texas Family Code.@  Section 261.001(8) defines A[b]orn
addicted to alcohol or a controlled substance@ to
refer to a child Aborn to a mother who used during
the pregnancy a controlled substance [as defined by applicable law]@ and
who, after birth, as a result of the mother=s use of
a controlled substance, exhibits withdrawal symptoms, health effects, or the
demonstrable presence of a controlled substance in the child=s bodily
fluids.[20]  We therefore review the record to determine
whether the trial court=s finding that P.K.C. was born
addicted is supported by clear and convincing evidence that L.C. used a
controlled substance and that, as a result, P.K.C. suffered from withdrawal
symptoms, displayed adverse health effects, or had the controlled substance in
her bodily fluids.

L.C. admitted that she had an extensive history
of using illegal drugs and that she used illegal drugs, including cocaine,
during the first three months of her pregnancy with P.K.C.  L.C. also testified that, despite knowing
drug usage during her pregnancy would be dangerous to the child, she drank
three beers and smoked marijuana the day before she gave birth to P.K.C.

Medical records placed in evidence without
objection reflect that P.K.C. tested positive for three drugs at birth:
marijuana, cocaine, and hydrocodone. 
L.C. admitted that during an interview in the hospital, after learning
the results of P.K.C.=s drug screening, she stated
that she Ahad went to a party, smoked a
joint, it was laced with cocaine, and I was high.@[21]








On appeal, L.C. questions the reliability of the
medical records, noting that the results of the drug screening reflect that she
tested negative for Aopiates@ while
P.K.C. tested Apositive@ for
opiates.[22]  L.C. also points to disclaimers in the drug
test reports stating that the tests are Apreliminary@ in nature
and that, absent confirmation by separate testing, the results of the drug
tests Ashould
not be used for non-medical purposes.@  Finally, L.C. notes that TDFPS did not
provide expert testimony regarding the test results.

TDFPS asserts in response that the drug test
records reflect that two tests were performed on P.K.C., one of which indicated
only whether the screening was Apositive@ or Anegative,@ and the
other of which Aconfirms@ the
positive results and provides specific amounts of drug levels.  TDFPS also contends that L.C.=s
failure to object to the admissibility of the medical records precludes her
from asserting in a sufficiency argument that the tests are unreliable.

The record contains evidence that P.K.C. has
extensive medical needs.  Specifically,
there is evidence of the following:

$                  
P.K.C. suffered from failure to thrive, the cause of which was
organic-based, and she had to have surgery to install a feeding pump;








 

$                  
P.K.C. had not gained enough weight to wean her off the feeding tube;

 

$                  
P.K.C. needs a home health nurse;

 

$                  
Doctors recommended in August and October 2007 (around seven and nine
months after P.K.C.=s birth) that P.K.C. not
be moved from the foster placement;

 

$                  
P.K.C. has a heart murmur; and

 

$                  
P.K.C.=s foster mother was
concerned that P.K.C. is a Amedically-fragile baby@ because she is on strict
feeding routines based on doctor=s orders.

 

L.C. asserts that there is no evidence in the record connecting P.K.C.=s health
issues to L.C.=s drug usage.  L.C. does not, however, challenge the test
results showing that P.K.C. was born with cocaine in her bodily fluids.

Viewing all this evidence most favorably to the
finding and judgment, and deferring to the trial court=s
resolution of credibility issues, we conclude that the trial court=s Aborn
addicted@ finding
is supported by legally and factually sufficient evidence.[23]  Because we find sufficient evidence to
support this finding, we need not address L.C.=s
sufficiency issues regarding other subsections of section 161.001.[24]








                                 V.  Best Interest of the Child

To uphold the termination order,
however, we must also examine the sufficiency of the evidence to support the
court=s
finding that termination is in the child=s best
interest.[25]  Prompt and permanent placement of the child
in a safe environment is presumed to be in the child's best interest.[26]  There is also a strong presumption that
keeping a child with a parent is in the child=s best
interest.[27]  Nonexclusive factors that the trier of fact
in a termination case may use in determining the best interest of the child
include:

(1)    the desires
of the child;

 

(2)    the
emotional and physical needs of the child now and in the future;

 

(3)    the
emotional and physical danger to the child now and in the future;

 

(4)    the
parental abilities of the individuals seeking custody;

 

(5)    the
programs available to assist these individuals to promote the best interest of
the child;

 

(6)    the
plans for the child by these individuals or by the agency seeking custody;

 








(7)    the
stability of the home or proposed placement;

 

(8)    the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one; and

 

(9)    any
excuse for the acts or omissions of the parent.[28]

 

These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.[29]  Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.[30]  On the other hand, the presence of scant
evidence relevant to each factor will not support such a finding.[31]

Accordingly, we will now examine the evidence in
light of these factors.

A.     The desires of the child

P.K.C is too young to express her desires.  However, there was testimony that P.K.C is
bonded with her foster mother, C.S., who intervened in this action seeking to
adopt P.K.C.  The record reflects that
C.S. is meeting P.K.C.=s medical needs.








B.     The
emotional and physical needs of the child now and in the future

P.K.C. has extensive medical
needs.  She had surgery to install a
feeding tube and experienced problems after the surgery.  There was testimony at trial that P.K.C has
been diagnosed with failure to thrive and acid reflux and that P.K.C.=s
failure to thrive has an organic-based cause. 
At the time of trial, P.K.C. had not gained enough weight to wean her
off the feeding tube.  P.K.C. needs a
home health nurse.

C.     The emotional and physical danger to the
child now and in the future

P.K.C. requires extensive care to monitor and
treat her ongoing medical problems and needs. 
L.C. admitted that she has a history of abusing drugs, including cocaine
and marijuana, since she was 20 years old.

D.     The parental abilities of the individuals
seeking custody

L.C. has a history with Child Protective Services
dating back to 1995.  She has three other
children besides P.K.C., none of whom live with her.  L.C. last saw her oldest child eleven years
ago.  Moreover, at the time of trial, L.C.
was in jail and unable to immediately care for P.K.C.

C.S. is meeting P.K.C.=s
needs.  C.S.=s
extended family is involved on a daily basis in P.K.C.=s
life.  TDFPS supports permanent placement
of P.K.C. with C.S.








E.     The
programs available to assist these individuals to promote the best interest of
the child

 

L.C.=s CPS
caseworker gave L.C. a service plan but, at the time of trial, she had not
completed any of her services.  L.C.
testified that, when she is paroled, she wants to be referred into a parenting
program that takes in women coming out of prison and works with them to get
their children back.

C.S. is able to work from home a majority of the
time and has extended family close by to help provide care for P.K.C.  P.K.C. is in day care approximately twenty
hours per week.

F.      The
plans for the child by these individuals or by the agency seeking custody and
the stability of the home or proposed placement

 

TDFPS plans for P.K.C. to be adopted by C.S.  C.S. intends to continue to provide a stable,
healthy home environment for P.K.C., including remaining employed as a foster
care case manager, which enables her to work from home a majority of the time,
and ensuring that her extended family continues to be involved in P.K.C.=s daily
life.

L.C. acknowledged at trial that she was not
immediately able to care for P.K.C. because of her incarceration.  L.C. wants P.K.C. moved from foster care with
C.S.  She also wishes for the trial court
to send her for rehabilitative treatment when she is released on parole.  None of P.K.C.=s blood
relatives are suitable or viable placements for P.K.C.








G.     The
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one

 

L.C. has a history of criminal behavior and drug
abuse.  She admitted to drinking three
beers and smoking marijuana the day before P.K.C. was born.  She has three other minor children besides
P.K.C., none of whom live with her.  It
has been eleven years since L.C. last saw her oldest child.  L.C. maintained only minimal contact with her
CPS caseworker and only visited P.K.C. once after P.K.C. was removed to foster
care, despite a period of time between P.K.C.=s
removal to foster care and the trial where she was not incarcerated and had
opportunities to visit P.K.C. 

H.     Any excuse for the acts or omissions of the
parent

L.C. claimed that she did not know that the
marijuana she smoked the day before she gave birth to P.K.C. was laced with
cocaine. 

Applying the appropriate standards of review, we
conclude that the trial court=s
finding that termination of L.C.=s
parental rights is in P.K.C.=s best
interest is supported by legally and factually sufficient evidence.  Accordingly, we overrule L.C.=s final
issue.

                                          VI.  Conclusion








Having determined that the evidence was legally
and factually sufficient to support the trial court=s
finding of at least one ground for termination and to support the trial court=s
finding that termination of the parent-child relationship was in the child=s best
interest, we affirm the trial court=s
judgment.

 

PER
CURIAM

 

PANEL:  CAYCE, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED:  February 5, 2009











[1]See Tex. R. App. P. 47.4.





[2]The names of the parent,
child, and foster parent subject to this appeal have been replaced with
initials in accordance with Texas Rule of Appellate Procedure 9.8.  Tex. R. App. P. 9.8.





[3]Santosky v. Kramer, 455 U.S. 745, 758B59, 102 S. Ct. 1388, 1397
(1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).





[4]In re C.H., 89 S.W.3d 17, 26 (Tex.
2002).





[5]Tex. Fam. Code Ann. ' 161.206(b) (Vernon Supp.
2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).





[6]Holick, 685 S.W.2d at 20B21; In re E.M.N.,
221 S.W.3d 815, 820 (Tex. App.CFort Worth 2007, no pet.).





[7]Tex. Fam. Code Ann. ' 161.001; In re J.L.,
163 S.W.3d 79, 84 (Tex. 2005).





[8]Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d 531, 533
(Tex. 1987).





[9]Tex. Fam. Code Ann. '' 161.001, 161.206(a); In
re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).





[10]In re G.M., 596 S.W.2d 846, 847
(Tex. 1980); In re C.S., 208 S.W.3d 77, 83 (Tex. App.CFort Worth 2006, pet.
denied).





[11]Tex. Fam. Code Ann. ' 101.007 (Vernon 2002).





[12]In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005).





[13]Id.





[14]Id.





[15]In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).





[16]C.H., 89 S.W.3d at 28.





[17]H.R.M., 209 S.W.3d at 108.





[18]J.F.C., 96 S.W.3d at 266B67.





[19]Tex. Fam. Code Ann. ' 161.001(1)(R) (Vernon
Supp. 2008).





[20]Id. ' 261.001(8).





[21]L.C. testified at trial
that when she smoked the marijuana, she Adidn=t expect for cocaine to be inside it.@





[22]TDFPS offers a potential
explanation in its brief for why a child might test positive while an adult
would not, but because TDFPS did not present this explanation or any evidence
supporting it at trial, we do not consider it here.





[23]See Tex. Fam. Code Ann ' 161.001(1)(R).





[24]See id. ' 161.001; see also
In re J.L., 163 S.W.3d 79, 84 (Tex. 2005); In re S.F., 32 S.W.3d
318, 320 (Tex. App.CSan Antonio 2000, no
pet.) (AOnly one finding alleged
under section 161.001(1) is necessary to a judgment of termination.@).





[25]See In re J.O.C., 47 S.W.3d 108, 114
(Tex. App.CWaco 2001, no pet.).





[26]Tex. Fam. Code Ann. ' 263.307(a) (Vernon
2002).





[27]In re R.R., 209 S.W.3d 112, 116
(Tex. 2006).





[28]Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).





[29]C.H., 89 S.W.3d at 27.





[30]Id.





[31]Id.